IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| SAMSON HO, on Behalf of Himself and All Others Similarly Situated,<br>617 SOUTH SANTA ANITA AVENUE<br>SAN MARINO, CA 91108<br><br>          Plaintiff,<br><br>v.<br><br>PROSHARE ADVISORS LLC<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>PROSHARES TRUST<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>SEI INVESTMENTS DISTRIBUTION CO.<br>1 FREEDOM VALLEY DRIVE<br>OAKS, PENNSYLVANIA 19456<br><br>LOUIS M. MAYBERG<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>RUSSELL S. REYNOLDS, III<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>MICHAEL L. SAPIR<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>MICHAEL WACHS<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>and<br><br>SIMON D. COLLIER,<br>7501 WISCONSIN AVENUE<br>BETHESDA, MARYLAND 20814<br><br>          Defendants. | Civil No.:_____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 11 AND 15 OF THE SECURITIES ACT OF 1933**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, individually, and on behalf of all others similarly situated, by his attorneys, makes the following allegations on information and belief, except for those allegations pertaining to Plaintiff and Plaintiff's counsel which are based upon personal knowledge. The investigation conducted by Plaintiff's counsel included, but was not limited to, a review and analysis of public filings made by Defendants with the United States Securities and Exchange Commission (the "SEC"), press releases and other public statements made by Defendants, reports and interviews published in the press, public statements and investor alerts made by the SEC and other financial regulatory agencies, and information obtained by Plaintiff.

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons who purchased or otherwise acquired shares in UltraShort Financials ProShares ("SKF"), an exchange traded fund ("ETF") offered by ProShares Trust ("ProShares Trust"), pursuant or traceable to ProShares Trust's false and misleading Registration Statement, Prospectuses, and Statements of Additional Information and other filings made with the SEC (collectively, the "Registration Statement") whereby SKF shares were made available to public investors. Plaintiff, on behalf of himself and all members of the Class, seeks damages under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"). This action asserts strict liability and negligence claims against all Defendants.

2. SKF is one of a series of ETFs issued by ProShares Trust. ProShares Trust is regulated by the SEC under the Investment Company Act of 1940 (the "1940 Act"). ETFs track a specified stock index or class of assets and trade like a stock on a public exchange. "Leveraged" and/or "inverse" ETFs, such as SKF, have multiplied over the last few years, providing investors alternate vehicles to take bullish, bearish, and leveraged positions on popular stock indices or types of assets. As noted by recent SEC and Financial Industry Regulatory Authority ("FINRA") investor alerts, "[i]n the last few years, a number of leveraged and inverse

ETFs have been introduced to the market that are <u>very</u> different from the traditional variety of ETFs." (Emphasis added).

3. SKF was one of a number of new funds organized by ProShare Advisors in early 2007. A registration statement for the issuance of SKF shares was declared effective by the SEC on or about January 30, 2007, and shares of SKF began trading on the American Stock Exchange on February 1, 2007.

4. As set forth more fully below, as part of ProShares Trust's "Ultrashort" series of ETFs, SKF was designed to produce investments results twice the inverse daily performance of the Dow Jones U.S. Financials Index ("DJFI"). The DJFI is an index created by Dow Jones consisting of a basket of stocks of United States based financial companies including large banks and insurance companies. Thus, if the DJFI was to decline by 1% on a particular trading day, SKF was designed to increase by 2% (before fund fees and expenses). SKF was marketed by Defendants as a short or inverse direction play on the United States financial sector.

5. What was presented to investors as a simple mathematical model using an objective formula to create a portfolio that will produce an inverse two times (2X) return compared to the DJFI, was anything but simple. At various periods in the last two years as United States financial stocks declined substantially, SKF performed nearly the opposite of what investors had been told to expect. For example, during the period from September 15, 2008 through October 31, 2008, a period of extreme turmoil in the United States financial markets, the DJFI declined by 17.37%. During this same period, based upon the way SKF was marketed, it should have been up sharply. Instead, SKF actually declined by 5.98% during this time.

6. As both the SEC and FINRA warned in a joint investor alert issued on August 18, 2009: "[Leveraged and inverse leveraged ETFs] performance over longer periods of time – over weeks or months or years – can differ significantly from the performance (or the inverse of the

performance) of the underlying index or benchmark during the same period of time. This effect can be magnified in volatile markets." As set forth below, the Registration Statement for SKF failed to disclose such facts to investors making the Registration Statement materially false and misleading. As a direct and proximate result of the misleading Registration Statement, Plaintiff, and the members of the Plaintiff Class as defined below, have suffered substantial losses from their purchases of SKF shares.

## JURISDICTION AND VENUE

7. This Complaint asserts claims pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§77k and 77o.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act.

9. Venue is proper in this District under 28 U.S.C. §1391 because Defendants either reside in or, as to the named corporate defendants, maintain their principle place of business within this District and the acts and practices complained of in the complaint occurred in substantial part in this District including, but not limited to, the drafting and filing of the allegedly false and misleading Registration Statement. Venue in the Southern Division of this District is appropriate under local rules since the corporate defendants name herein maintain their principle place of business and the individual defendants reside within the counties constituting the Southern Division.

10. In connection with conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone and internet communications and the facilities of the national securities exchanges.

#1147832v.1

## THE PARTIES

11.     Plaintiff Samson Ho ("Plaintiff") is a resident of the State of California. As described in the certification attached as Exhibit A to this Complaint, Plaintiff purchased shares of SKF during the class period and suffered damages as a direct result of such purchases.

12.     Defendant ProShare Advisors LLC is a limited liability company organized under the laws of the State of Maryland. ProShare Advisors's principle place of business is at 7501 Wisconsin Avenue, Suite 1000, Bethesda, Maryland 208814. At all times relevant to the allegations of this Complaint, ProShare Advisors served as the investment advisor for SKF. During the class period, ProShare Advisors developed and managed the investment strategies implemented by SKF and received fees from SKF for such services. The principle shareholders of ProShare Advisors are Defendants Louis Mayberg, William Seale and Michael Sapir.

13.     Defendant ProShares Trust is a statutory trust organized under the laws of the State of Delaware. ProShares Trust's principle place of business is at 7501 Wisconsin Avenue, Suite 1000, Bethesda, Maryland 208814. ProShares Trust is an open-end management investment company regulated under the 1940 Act and is registered with the SEC. SKF is one of a series of ETFs issued by ProShares Trust. Shares of SKF trade on the American Stock Exchange ("AMEX") under the symbol "SKF."[1] SKF shares are issued and redeemed by ProShares Trust on a continuous basis at net asset value ("NAV"). In 2008, ProShares Trust was one of the largest United States companies issuing ETFs.

14.     Defendant SEI Investments Distribution Company ("SEI") is the distributor and principal underwriter of SKF shares. ProShares Trust retained SEI to distribute shares of SKF to brokers located throughout the United States for resale to shareholders such as Plaintiff. SEI is

---

[1] As a result of the NYSE's recent purchase of the AMEX, that exchange is now known as NYSE ACCA.

#1147832v.1

incorporated under the laws of the State of Pennsylvania, and its principle place of business is 1 Freedom Valley Drive, Oaks, Pennsylvania 19456.

15. Defendant Louis M. Mayberg ("Mayberg") is one of the founders and is President of ProShare Advisors. Defendant Mayberg signed the Registration Statement for SKF.

16. Defendant Michael L. Sapir ("Sapir") is the Chairman and Chief Executive Officer of ProShare Advisors, Chairman of ProShares Trust, and acts as an Interested Trustee of ProShares Trust. Defendant Sapir signed the Registration Statement for SKF.

17. Defendant Simon D. Collier ("Collier") is the Treasurer and, as such, is the principal financial officer of ProShares Trust. Collier signed the Registration Statement for SKF.

18. Defendant Russell S. Reynolds, III ("Reynolds") is a Non-Interested Trustee of ProShares Trust. Reynolds signed the Registration Statement for SKF.

19. Defendant Michael Wachs ("Wachs") is a Non-Interested Trustee of ProShares Trust. Wachs signed the Registration Statement for SKF.

20. The defendants named in Paragraphs 15-19 above are collectively referred to as the "Individual Defendants." At all times pertinent, each Defendant was an agent and/or employee of the other Defendants, and each of them, and was acting in the course and scope of such agency and/or employment, and with the consent, permission, and/or authorization of the other Defendants, and each of them. Defendants, and each of them, are individually sued herein as participants and aiders and abettors in the improper acts and transactions alleged herein.

21. Each of the Defendants owed to the purchasers of SKF shares, including Plaintiff and the Plaintiff Class, a duty to make a reasonable and diligent investigation of all statements made to the public, including, but not limited to, statements made in the Registration Statement for the SKF shares. This duty included performing an appropriate investigation to ensure that the statements made were true, and that there were no omissions of material fact required to be

stated in order to make the statements made by Defendants not misleading. As herein alleged, each of the Defendants violated these specific duties and obligations.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (B)(3) on behalf of a class consisting of all persons or entities who purchased or acquired shares of SKF pursuant or traceable to the Company's false and misleading Registration Statement and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers, directors, and trustees of ProShare Advisors, ProShares Trust and SEI, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class

24.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the Securities Act.

25.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

26.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.     whether the Securities Act was violated by Defendants' acts as alleged

herein;

    b.  whether statements made by Defendants to the members of the Class in the Registration Statement misrepresented material facts about the business, operations and/or management of ProShares Trust and SKF; and

    c.  to what extent the members of the Class have sustained damages and the proper measure of damages.

  27.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## HISTORY OF ETFS AND INVERSE ETFS

  28.  Exchange-Traded Funds, commonly known as ETFs, were first introduced in 1993. The first ETF tracked the performance of the S & P 500 and traded on the AMEX under the symbol SPY. ETFs were issued by open-ended investment companies regulated under the 1940 Act. While organized similar to a mutual fund, ETFs trade on stock exchanges like a common stock. The first ETFs such as the SPY tracked broad-based market indices. With SPY and similar ETFs investors had a low cost alternative to enable them to achieve broad diversification in their investment portfolios.

  29.  What started as an important innovation for investors wanting broad diversification at a low cost has exploded in recent years. Led by companies such as ProShare Advisors, investment companies began creating new ETFs that tracked specific sectors and even classes of assets. More recently ProShare Advisors introduced inverse, leveraged and inversed

leveraged ETFs. Not only did these new ETFs track more esoteric indices but through the use of leverage could be designed to reproduce the investment results of the tracked index by two or more times. Inverse ETFs were, as the name suggests, designed to produce the inverse results of the tracked index, thus being in essence a new way to make a short play on equity and asset based investments. Inverse leveraged ETFs combined both of these features. Such ETFs were designed to produce the inverse results of the tracked index by a factor times two or greater. SKF was designed to produce inverse results two times greater than the DJFI.

30. Traditional equity index tracking ETFs such as SPY are relatively simple to create and maintain over time. The SPY buys a basket of S & P 500 stocks using the same formula as the S & P 500 index. The result is that a single share of SPY performs exactly over time, adjusted slightly for the fund's costs, as the S & P 500 index. Each trading day the price of a share of SPY raises or falls in step with the rise and fall of the individual stocks making up the index. Adjustments are minimal because only when a company is dropped or added to the index is the basket of stocks readjusted. Since SPY's were introduced in 1993, using index tracking ETFs became an important component of millions of investors' portfolios.

31. However, leveraged and inverse leveraged ETFs are a far different investment product. In order to produce the multiple performance of the selected index, an inverse leveraged ETF such as SKF must purchase sophisticated investment products such as futures, swaps, options and other derivative instruments. "[SKF] uses . . . futures contracts, options on futures contracts, securities and indices, forward contracts, swap agreements and similar instruments." January 30, 2007 Registration Statement filed by ProShares Trust.

32. Since 2005, the number of leveraged and inverse leveraged ETFs has increased exponentially. At the time of the January 30, 2007 Registration Statement, ProShares Trust sponsored 24 leveraged (long) ETFs and 40 short and leveraged short ETFs. Of those 40 short

ETFs, 30 were so-called Ultrashort or two times short ETFs. On February 1, 2007, pursuant to a registration statement filed by ProShares Trust with the SEC, shares of SKF began trading on the AMEX.

## THE FALSE AND MISLEADING REGISTRATION STATEMENT FOR SKF

33. Ultrashort ETFs such as SKF are described by ProShares Trust as investment funds that "[s]eek profit from downturns." ProShares Trust told investors that through its Ultrashort family of ETFs they had a simple way to generate positive investment returns in market segments that the investor "think[s] is poised to fall." In statements made on its website about its short and ultrashort ETFs, ProShares Trust asserted that "[s]hort ProShares and UltraShort ProShares make it simple for you to execute sophisticated strategies designed to manage risk or enhance return potential." In describing the advantages of its short ETFs, ProShares Trust stated: "Short selling a stock or ETF requires a margin account. Short ProShares don't. They allow you to get short exposure without the hassles—or expense—of a margin account. It's as simple as buying a stock."

34. On or about January 30, 2007, ProShares Trust filed with the SEC Form 8-A whereby ProShares Trust formally registered shares of SKF for sale to public investors (the "Registration Statement"). SKF was one of 66 ETFs covered by this Registration Statement, 22 of which were Ultrshort ETFs. Forming a portion of this Registration Statement was a prospectus for SKF and the other ProShares Trust ETFs. As described in the Registration Statement, SKF "seeks daily investment results, before fees and expenses, that correspond to twice (200%) the inverse (opposite) daily performance of the [DJFI]." "The [DJFI] measures the performance of the financials industry of the U.S. equity market. Component companies include banks; insurance companies and brokers; real estate companies, including REITs, real estate holding and development companies, and real estate service companies . . ." among others. Fact

Sheet dated June 9, 2009 for SKF as found on ProShares Trust website.

35.  Because SKF is an inverse leveraged ETF (commonly referred to as an inverse 2X ETF), ProsShare Advisors, SKF's investment manager, had to invest in derivative securities as well as the underlying equities making up the DJFI. Thus, SKF's principal investment strategies included:

- Investing in equity securities and/or financial instruments (including derivatives) that ProShare Advisors believes, in combination, should have similar daily return characteristics as twice (200%) the daily return of the Dow Jones U.S. Financials Index. Information about the Index can be found in the section entitled "Underlying Indexes."

- Committing at least 80% of its net assets, including any borrowings for investment purposes, under normal circumstances, to equity securities contained in the Index and/or financial instruments that, in combination, should have similar economic characteristics.

- Employing leveraged investment techniques and/or sampling techniques in seeking its investment objective.

- Investing assets not invested in equity securities or financial instruments in debt securities and/or money market instruments.

- The SKF will concentrate its investments in a particular industry or group of industries to approximately the same extent as the Index is so concentrated. As of the close of business on June 30, 2008, the Index was concentrated in the banks and general financial industry groups, which comprised approximately 34% and 28%, respectively, of the market capitalization of the Index.

36.  On February 1, 2007, shares of SKF commenced trading on the AMEX under the symbol "SKF." Over the next two and one half years as the United States financial markets suffered losses not seen since the Great Depression, the DJFI declined from 602.93 on February 1, 2007 to 256.84 on August 25, 2009. In the face of this financial turmoil, members of the Plaintiff Class who invested in SKF to hedge their assets against this unprecedented decline thought they had made the right directional move by buying SKF. However, during this period, in which the DJFI declined by 57.4%, the SKF declined by even a greater amount –59.46%. Thus, a fund presented to investors as performing at twice the inverse performance of its benchmarked index performed the opposite of any reasonable expectations.

37. Other time periods showed a similar disconnect between the SKF and the DJFI. During all of 2008 when the financial crisis was at its peak, the DJFI declined by 51.1%. SKF declined by 1.42% in the same period. During the height of the financial crisis, November through January 2008-2009, the DJFI declined by 29.16% while SKF declined by 3.2%.

38. The SKF Registration Statement failed to adequately disclose the disconnect between SKF's performance compared to the DJFI. As to leverage and volatility risks the Registration Statement stated:

> Leverage Risk: The UltraShort Financials ProShares' NAV and market price will likely be more volatile than the index underlying its benchmark and funds that do not employ leverage. Leverage should cause the Fund to lose more money in market environments adverse to its daily investment objective than an unleveraged investment.
>
> Volatility Risk: UltraShort Financials ProShares seeks to achieve a multiple of an index and therefore will experience greater volatility than the index underlying its benchmark and consequently has the potential for greater losses.

39. These disclosures were materially false and misleading because they failed to disclose the effect that volatility of the underlying index, the DJFI, will have on SKF's performance over periods longer than a single day. It was the volatility of the DJFI that was material to SKF's performance not just SKF's volatility. Because of the effect of compounding, high volatility in the underlying index will result in SKF's performance diverging dramatically from its benchmark index regardless of the index's movements. The chart below provides a hypothetical example of this effect:

|  | Low Volatility | | High Volatility | |
| --- | --- | --- | --- | --- |
|  | Index | SKF | Index | SKF |
| Starting Value | 100 | 100 | 100 | 100 |
| Day One | 101 | 98 | 110 | 80 |
| Day Two | 100 | 99.94059 | 100 | 94.54545 |
| 2-Day Return | 0.00% | -0.06% | 0.00% | -5.45% |

11

40.     As the above indicates, high volatility in the DJFI results in SKF performing in a manner contrary to its stated objectives. Nowhere does the Registration Statement disclose this fact. Defendants represented that SKF was an inverse directional play on the price movement of the equities that make up the DJFI. What was not disclosed was that SKF is a bet on the direction of the DJFI and <u>on the volatility and path</u> the DJFI takes over any period of time longer than a single trading day.

41.     Subsequent to the effective date of the Registration Statement, the ProShares Trust filed with the SEC additional disclosures concerning SKF. The additional disclosures not only failed to reveal the inherent limitations of SKF but suggested that SKF was an appropriate investment for periods longer than a single trading day. In an October 2008 prospectus issued by the ProShares Trust, Defendants marketed SKF as suitable for longer term investment:

> The Funds are 'leveraged' funds in the sense that they have investment objectives to match the inverse, a multiple, or a multiple of the inverse of the performance of the index on a given day These funds are subject to all of the correlation risks described above. In addition, there is a special form of correlation risk that derives from these funds' use of leverage, which is that for periods greater than one day, the use of leverage trends to cause the performance of the Fund to be either greater than or less than the index performance (or the inverse of the index performance) times the stated multiple in the Fund objective, before accounting for fees and fund expenses
> 
> The three graphs that follow illustrate this point. Each of the three graphs shows a simulated hypothetical one year performance of an index compared with the performance of a fund that perfectly achieves its investment objective of twice (200%) the daily index returns. The graphs demonstrate that, for periods greater than one day, a leveraged Fund is likely to underperform or over-perform (but not match) the index performance (or the inverse of the index performance) times the stated multiple in the Fund objective.

42.     While the later October 2008 prospectus goes beyond the disclosures made in the original Registration Statement, it does not disclose the fact that the volatility effect will more likely than not result in SKF underperforming. Examining the performance of the DJFI

compared to a fund such as SKF constructed to perform inverse 2X to the DJFI reveals that the mathematics of compounding leads to such underperformance. The DJFI began tracking the U.S. financial sector in 1993. Using a simulated one-year return of a fund that tracks twice the inverse daily performance of the DJFI from 1994 through 2007 (without considering fees and expenses) shows a median discrepancy of a simulated SKF within each year of negative 2.15% each trading day. Looking at the one-year return of such a simulated SKF results in an expected return compared to the DJFI that is negative (the fund underperforms its expressed target return) over 60% of the time. If 2008 is included in such a simulation based upon historical results, the median discrepancy is negative 2.43%, meaning the simulated SKF will underperform 62% of the time. Thus, it is more probable than not that, due to the volatility and the effects of compounding, SKF will underperform its target index over any period of time longer than a single trading day. The Registration Statement did not disclose this highly material fact.

    43.    The Registration Statement states that the use of leverage in SKF's portfolio "tends to cause the performance of a Fund [such as SKF] to be either greater than or less than the index performance (or the inverse of the index performance) times the stated multiple. This statement implies that a leveraged fund such as SKF will sometimes underperform and sometimes outperform its benchmark index. It fails to disclose that a fund such as SKF is far more likely to underperform compared to its benchmark index.

    44.    Moreover, the inclusion in the Registration Statement of hypothetical performance over a one-year period suggests to investors in SKF that holding periods of over a single trading day are appropriate. The inclusion of the one-year holding charts is a clear statement by Defendants that holding SKF shares for a period time is appropriate. In fact, ProShares Trust marketed SKF and its other ETFs as suitable for longer than a single day investment. The charts included in the Registration Statements are also misleading because the

variation in SKF's performance and the benchmark index is less than 1% over any single one year period. As shown above, the actual performance variation is much greater. Defendant Sapir stated that ProShares Trust's ETFs can be used by investors "for more than a day successfully."

45. Investors in SKF, including plaintiff and members of the Plaintiff Class, believed they were purchasing a fund that would protect their assets if the equities making up the DJFI declined in value. Defendants, through a materially false and misleading Registration Statement, issued and sold shares of SKF to the Plaintiff Class based upon the express representation that SKF was an inverse directional play on the performance of the DJFI and that investments in SKF were appropriate for holding periods longer than a single trading day. Nowhere in the Registration Statement do Defendants reveal that SKF would not perform in the way it was marketed or that it was a high risk investment suitable only for day trading.

46. As shown above, the disclosures and representations made by Defendants in the SKF Registration Statement were materially false and misleading for failing to disclose:

    (a) The mathematical probability that SKF's performance will fail to track the performance of the DJFI over any period longer than a single trading day;

    (b) That the greater volatility experienced by the DJFI will result in SKF underperforming by a material amount the DJFI;

    (c) That SKF is not a directional play on the performance of U.S. financial stocks but dependent on the volatility and path the DJFI takes over any time period greater than a single day;

    (d) That SKF was not a simple investment that could be used over time to hedge against a downturn in U.S. financial stocks;

    (f) That based upon the mathematics of compounding, the volatility of the

#1147832v.1

DJFI and probability theory, SKF was highly unlikely to achieve its stated investment objectives over time periods longer than a single trading day.

## THE REGULATORS WARN INVESTORS

47.     By June 2009, the securities regulators finally took notice of the severe problems investors in funds such as SKF had experienced. That month FINRA issued Regulatory Notice 09-31 warning the securities industry of the dangers of leveraged inversed ETFs such as SKF. The notice admonished members that sales materials for such ETFs "must be fair and accurate." A FINRA spokesperson stated: "Exotic ETFs, such as inverse, leveraged and inverse-leveraged ETFs, are extremely complicated and confusing products, and the marketing and sale of these products to unsophisticated and retail investors is very much on FINRA's radar screen." The chief Massachusetts securities regulator, Secretary of State William Galvin, announced on July 15, 2009 that his office had begun an investigation into the sales practices of firms selling leveraged ETFs including ProShares Trust. In commenting on ETFs such as SKF, Galvin noted that "due to the daily nature of the leverage employed, there is no guarantee of amplified annual returns and they generally incur greater transaction costs than traditional exchanged traded funds."

48.     Subsequent to these announcements a number of prominent brokerage firms restricted or halted the sale of leveraged ETFs to their customers. Edward Jones & Co. described leveraged ETFs as "one of the most misunderstood and potentially dangerous types of ETFs." As reported in the Wall Street Journal, Charles Schwab & Co. issued a warning to its customers on July 28, 2009, telling them that "while there may be limited occasions where a leveraged or inverse ETF may be useful for some type of investors, it is extremely important to understand that, for holding periods longer than a day, these funds may not give you the returns you may be expecting." Schwab closed its warning by telling investors considering purchasing ETFs such as

SKF: "Proceed with <u>extreme</u> caution." (Emphasis added).

49. On August 18, 2009, the SEC and FINRA took the unusual step of issuing a joint investor alert to warn investors about the dangers of holding leveraged and inverse leveraged ETFs. The joint investor alert stated: "[Leveraged and inverse ETFs'] performance over longer periods of time (more than a single day) –over weeks or months or years—can differ significantly from the performance (or inverse of the performance) of their underlying index or benchmark during the same period of time. This effect can be magnified in volatile markets."

## FIRST CAUSE OF ACTION
### (Violation of Section 11 of the Securities Act)

50. Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

51. This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of Plaintiff and the Plaintiff Class against all Defendants.

52. Plaintiff explicitly disclaims any statement in the Complaint that alleges or can be construed to allege that Defendants committed intentional misconduct or that Defendants acted with scienter or intent to defraud.

53. ProShares Trust was the issuer of shares of SKF covered by a registration statement filed with the SEC on or about January 30, 2007. Each of the Individual Defendants named in this Complaint signed, or authorized others to sign on their behalf, the Registration Statement as well as all subsequent SEC filings concerning SKF shares As the issuer of the SKF shares, ProShares Trust is strictly liable for the material misstatements and omissions of material facts made in the Registration Statement. The other Defendants, as signatories to the Registration Statement or as underwriters of the SKF offering, owed Plaintiff and the Plaintiff Class the duty to make a reasonable investigation of all statements made in the Registration

16

Statement to ensure that the statements made therein were true and that there was no omission of any material fact required to make the statements made not misleading.

54. Prior to Plaintiff's and the Plaintiff Class' purchase of SKF shares, the Registration Statement became effective or was declared effective by the SEC. The Registration Statement contained untrue statements of material facts and/or omissions of material facts required to be stated therein or necessary to make the statements therein not misleading, as alleged above.

55. Plaintiff and the Plaintiff Class were purchasers of SKF shares issued pursuant to the Registration Statement. The SKF shares purchased by Plaintiff and the Plaintiff Class were issued pursuant to the Registration Statement filed by ProShares Trust with the SEC, and those shares are directly traceable to the false and misleading Registration Statement used by Defendants to solicit the purchase of SKF shares

56. As a direct and proximate result of the making of false statements and/or omissions of material facts in the Registration Statement by Defendants, the value of SKF shares at all times during the Class Period were inflated by a material amount. Plaintiff and the Plaintiff Class are entitled to recover from Defendants, jointly and severally, such damages as represent the difference between the amount paid by them for their SKF shares and the true value of those shares. At the time they purchased shares of SKF, Plaintiff and the Plaintiff Class had no knowledge of the facts concerning the false and misleading Registration Statement and could not have reasonably discovered such false and misleading statements prior to at least June 2009 when FINRA issued its first alert to investors.

#1147832v.1

## SECOND CAUSE OF ACTION

### (Violations of Section 15 of the Securities Act)

57.     Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

58.     This claim is brought pursuant to Section 15 of the Securities Act against the Individual Defendants as control persons of ProShares Trust.

59.     The Individual Defendants are "control persons" of ProShares Trust within the meaning of Section 15 of the Securities Act, by virtue of their positions of operational control of ProShares Trust. At the time Plaintiff and the Plaintiff Class purchased shares of SKF, Individual Defendants had the power and authority, and exercised the same, to cause ProShares Trust to engage in the wrongful conduct complained of herein.

60.     Pursuant to Section 15 of the Securities Act, by reason of the foregoing, the Individual Defendants are liable to Plaintiff and the Plaintiff Class for ProShares Trust's primary violations of Section 11 of the Securities Act.

61.     By virtue of the foregoing, Plaintiff and the Plaintiff Class are entitled to damages against the Individual Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be rendered in favor of Plaintiff against Defendants as follows:

1.     Finding that this action is appropriate as a class action and certifying that Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure.

2.     For compensatory and general damages according to proof;

3.     For special damages according to proof;

4.     For prejudgment interest at the maximum legal rate;

5.     For the costs of the proceedings herein;

6. For rescission of all transactions made by members of the Plaintiff Class in shares of SKF;

7. For Plaintiff's reasonable attorneys' fees; and

8. For all such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

August 31, 2009

John B. Isbister, Federal Bar No. 00639
Jaime W. Luse, Federal Bar No. 27394
TYDINGS & ROSENBERG LLP
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
Telephone: (410) 752-9700
Facsimile: (410) 727-5460
jisbister@tydingslaw.com
jluse@tydingslaw.com

Bruce L. Simon California Bar No. 96241
George S. Trevor California Bar No. 127875
PEARSON, SIMON, WARSHAW & PENNY, LLP
44 Montgomery Street
Suite 1430
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Clifford H. Pearson California Bar No. 108523
PEARSON, SIMON, WARSHAW & PENNY, LLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Counsel for Plaintiff Samson Ho*